**In re Douglas Jay SAUNDERS, Debtor.**

No. 07–31529.

United States Bankruptcy Court, D. Minnesota.

Dec. 11, 2007.

Michael S. Dove, Gislason & Hunter LLP, New Ulm, MN, for Debtor.

Charles W. Ries, Maschka Riedy & Ries, Mankato, MN, for Petitioning Creditor.

ORDER GRANTING MOTION TO STRIKE DEBTOR'S RESPONSE AND DENYING DEBTOR'S MOTION TO DISMISS

DENNIS D. O'BRIEN, Bankruptcy Judge.

This case was commenced by the filing of an involuntary petition by Julene A. Hockel. The matter came before the Court on petitioner's motion to strike the debtor's response to the involuntary petition, and on the debtor's motion to dismiss the case. Charles W. Ries appeared on behalf of the petitioner, Julene A. Hockel; and Michael S. Dove appeared on behalf of the debtor, Douglas J. Saunders. At the conclusion of the hearing, the Court took the matter under advisement. Based upon all of the files, records and proceedings herein, the Court being now fully advised makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I. FACTUAL BACKGROUND

The facts material to this proceeding are not disputed. On December 17, 2004, the alleged debtor Douglas Saunders shot and killed Howard Hockel, petitioner Julene Hockel's husband. Saunders pleaded guilty to the crime of first degree murder. Saunders was sentenced to life incarceration and remains in the dual custody of the State of Minnesota Commissioner of Corrections and the Commissioner of Human Services at the State Security Hospital. He was recently formally committed by the State as a mentally ill and dangerous person in need of intensive in-patient treatment in a highly structured and secure setting.

Shortly following the crime and Saunders' arrest, his brother Keith Saunders was appointed Conservator of the Estate of Douglas J. Saunders. In September 2005, the Conservator filed an inventory of assets including, primarily, a 200 acre par-

cel of real property encumbered by several mortgages.

On March 27, 2007, Julene Hockel was appointed Trustee for the heirs and next of kin of Howard Hockel. Julene thereafter commenced a wrongful death action in state court against Saunders. On or about March 29, 2007, Hockel brought a motion for an order of attachment seeking to attach Saunders' property, including the 200 acre parcel, and to obtain a lien against the property to secure a judgment resulting from the wrongful death claim. The motion was set for hearing on April 9, 2007.

On April 2, 2007, however, attorney Calvin P. Johnson, Saunders' counsel in the criminal proceedings, obtained a mortgage against the real property in the amount of $161,338.90, to secure payment of attorney fees due for defending Saunders in the criminal proceedings. The mortgage was duly recorded on April 3rd. Attorney Johnson no longer represents Saunders, who answered the wrongful death complaint pro se.

The Conservator sold the real property on April 10, 2007, for $627,500. After mortgage encumbrances of $508,339, capital gains tax of approximately $100,000, and $50,000 owing to the Minnesota Crime Victims Reparations Board, the Conservatorship is short more than $30,000.

Hockel filed this involuntary bankruptcy petition on May 1, 2007, presumably for the purpose of avoiding Johnson's interest in the proceeds from the sale of the real property held by the Conservatorship and to secure her own interest in the proceeds pending the outcome of the wrongful death litigation. The summons on the involuntary was served upon Saunders, the Conservator, and the Executive Director of the State Security Hospital where Saunders is an inmate.

Johnson thereafter sought from the state court a release of funds from the Conservatorship to hire attorney Michael Dove to represent Saunders in the bankruptcy proceedings. The state court advised that the discretion to seek to hire counsel for Saunders belonged to his Conservator. Nevertheless, on May 22, 2007, Dove filed a response to the involuntary petition on behalf of Saunders, signed by Dove.

On June 4, 2007, counsel for the Conservator advised Dove in writing that the Conservator had not approved retaining Dove, that no attorney could represent Saunders without a court appointment, and that the Conservatorship would not pay Dove's fees in connection with his purported representation of Saunders.[1]

On the same day, counsel for the Conservator filed in this case a letter to the this Court stating:

> This letter is to make sure the Bankruptcy Court is aware that Keith Saunders is the Court appointed conservator for his brother Douglas J. Saunders, the debtor above-named. I'm enclosing for the Court copies of the Letters of the Conservatorship of the Estate and the Order Appointing Conservator of the Estate, both dated March 29, 2005. The conservator does not intend to respond to the Involuntary Bankruptcy Petition or to participate in the bankruptcy proceedings.

On September 21, 2007, Hockel brought the present motion to strike the debtor's response to the involuntary petition. On September 24, 2007, Dove filed the present motion to dismiss on behalf of Saunders.

---

**1.** In fact, Johnson has paid Dove's fees for filing the response to the involuntary petition and to bring the motion for dismissal.

Both parties filed responses and appeared at the hearing. Dove contends that the petition is invalid pursuant to § 303(b) because the debt claimed by Hockel is contingent and unliquidated, and that a guardian must be appointed to represent Saunders. Hockel claims that only the Conservator has the authority to answer the petition, and that the wrongful death claim represents a valid, noncontingent debt because the Conservator has not asserted a bona fide dispute to the claim as to liability or amount.

## II. DISCUSSION

*Conservators and Guardians*

█ Hockel is correct that under the controlling provision of Minnesota law, the Conservator has the authority to participate in this litigation on behalf of Saunders. The applicable statutory section arises under Part 4, Protection of Property of Protected Person, of Article 5, Uniform Guardianship and Protective Proceedings Act, of the Minnesota Uniform Probate Code. Section 524.5–401 provides, in pertinent part:

> Upon petition and after notice and hearing, the court may appoint a limited or unlimited conservator or make any other protective order provided in this part in relation to the estate and affairs of:

> (2) any individual, including a minor, if the court determines that, for reasons other than age:

>> (i) by clear and convincing evidence, the individual is unable to manage property and business affairs because of an impairment in the ability to receive and evaluate information or make decisions, even with the use of appropriate technological assistance, or because the individual is missing, detained, or unable to return to the United States; and

>> (ii) by a preponderance of evidence, the individual has property that will be wasted or dissipated unless management is provided or money is needed for the support, care, education, health, and welfare of the individual or of individuals who are entitled to the individual's support and that protection is necessary or desirable to obtain or provide money.

*See* Minn.Stat. § 524.5–401 (2003).

The order appointing the Conservator found that Saunders "is an incapacitated person with regard to [his] estate because of an impairment in the ability to receive and evaluate information or make decisions, and ... lacks sufficient understanding or capacity to make or communicate responsible decisions concerning [his] estate or financial affairs," and noted that "no appropriate alternative to conservatorship exists which is less restrictive." As a person permanently incarcerated by the state, and being repeatedly and recently determined mentally ill and dangerous, this is not surprising. Moreover, Saunders' Conservator was granted "all of the rights and powers" under the applicable protected person statute, which includes, in part:

(a) A conservator shall be subject to the control and direction of the court at all times and in all things.

(b) The court shall grant to a conservator only those powers necessary to provide for the demonstrated needs of the protected person.

(c) The court may appoint a conservator if it determines that all the powers and duties listed in this section are needed to provide for the needs of the protected person ... The duties and powers of a conservator include, but are not limited to:

(1) the duty to pay the reasonable charges for the support, maintenance, and education of the protected person in a manner suitable to the protected person's station in life and the value of the estate;

(2) the duty to pay out of the protected person's estate all lawful debts of the protected person . . .;

(3) the duty to possess and manage the estate, collect all debts and claims in favor of the protected person, or, with the approval of the court, compromise them, *institute suit on behalf of the protected person and represent the protected person in any court proceedings . . .;*

(5) the power to approve or withhold approval of any contract, except for necessities, which the protected person may make or wish to make;

(d) The conservator shall have the power to revoke, suspend, or terminate all or any part of a durable power of attorney of which the protected person is the principal with the same power the principal would have if the principal were not incapacitated. If a durable power of attorney is in effect, a decision of the conservator takes precedence over that of an attorney-in-fact.

*See* Minn.Stat. § 524.5–417 (2005) (emphasis added).

The conservatorship powers and duties are significant and broad, limited apparently only by the power to control contracts for necessities and other basically corporeal matters such as custody. Such matters are governed by Part 3, Guardian of Incapacitated Person, of Article 5, Uniform Guardianship and Protective Proceedings Act, of the Minnesota Uniform Probate Code. Section 524.5–313, Powers and Duties of a Guardian, provides, in pertinent part:

(1) the power to have custody of the ward and the power to establish a place of abode within or outside the state, except as otherwise provided in this clause;

(2) the duty to provide for the ward's care, comfort, and maintenance needs, including food, clothing, shelter, health care, social and recreational requirements, and, whenever appropriate, training, education, and habilitation or rehabilitation;

(3) the duty to take reasonable care of the ward's clothing, furniture, vehicles, and other personal effects, and, if other property requires protection, the power to seek appointment of a conservator of the estate.

(4)(i) the power to give any necessary consent to enable the ward to receive necessary medical or other professional care, counsel, treatment, or service, except that no guardian may give consent for psychosurgery, electroshock, sterilization, or experimental treatment of any kind unless the procedure is first approved by order of the court as provided in this clause. The guardian shall not consent to any medical care for the ward which violates the known conscientious, religious, or moral belief of the ward;

(5) *in the event there is no duly appointed conservator of the ward's estate,* the guardian shall have the power to approve or withhold approval of any contract, except for necessities, which the ward may make or wish to make;

(6) the duty and power to exercise supervisory authority over the ward in a manner which limits civil rights and restricts personal freedom only

to the extent necessary to provide needed care and services;

(7) *if there is no acting conservator of the estate for the ward,* the guardian has the power to apply on behalf of the ward for any assistance, services, or benefits available to the ward through any unit of government.

*See* Minn.Stat. § 524.5–313 (2005) (emphasis added).

 The distinction between a conservator and a guardian is evident from the unambiguous language of these complementary provisions. The latter addresses the needs of the person, quite literally, whereas the former, if appointed, addresses the related societal affairs of the individual and his estate. To the extent that a guardian sometimes also protects a ward's interests beyond those fundamentally physical, it is only so in the event that a conservator has not been appointed. As Hockel noted, the only guardianship power than could possibly apply in this controversy would be the power to contract, for the purpose of retaining counsel, but only if there were not a Conservator already appointed. Moreover, as a lifetime prisoner Saunders is effectively a permanent ward of the state and the need for a guardian in any event is therefore likely necessary under only narrow, limited circumstances. In this proceeding, the Conservator has the exclusive power to represent Saunders.[2]

The Conservator properly hired counsel to represent the Conservatorship in February, 2005.[3] Counsel for the conservator, Berens Rodenberg & O'Connor, remains counsel of record for the Conservatorship. There is no need or requirement for the appointment of a guardian in this proceeding, and attorney Dove as purported counsel for Saunders has no authority to act on his behalf in this proceeding.

*Eligibility of Involuntary Petition Under § 303*

The question remains whether the involuntary petition filed against Saunders meets the eligibility requirements of 11 U.S.C. § 303. The petition is based on a single unpaid debt to Hockel resulting from the wrongful death of her husband at the hands of Saunders. However, that debt has not been finally determined and remains in the early stages of state court litigation. Hockel contends that her claim is not contingent as to liability because the facts underlying her claim are undisputed and evident from Saunders' related criminal conviction. She also argues that, although unliquidated, her claim is also not disputed as to amount because the Conservator has filed in this case his intention not to contest the involuntary petition.

---

**2.** That the petition names Saunders himself as the debtor in this involuntary bankruptcy proceeding and does not caption the Conservator also or instead is appropriate. "Even though '[t]he [conservator] is a proper party for the record and has control of the prosecution of the action,' the conservatee should be named as a party in the caption of the action." *See In re Dartco, Inc.,* 197 B.R. 860, 871 (Bkrtcy. D.Minn.1996), citing *Martineau v. City of St. Paul,* 172 F.2d 777, 780 (8th Cir.1949). "Nonetheless, in all such cases the conservatee, and not the conservator, is the real party in interest." *Dartco,* 197 B.R. at 871, citing

*Dougherty v. Oberg,* 297 F.Supp. 635, 640 (D.Minn.1969).

**3.** The General Rules of Practice for the District Courts of Minnesota provide, in relevant part: Upon the appointment of a conservator or guardian of the estate, the appointee shall nominate a lawyer of record for that conservatorship or guardianship, or shall advise the court that he or she shall act pro se. The named lawyer shall be the lawyer of record until terminated by the conservator or guardian, or, with the consent of the court, by withdrawal of the lawyer. *See* Minn. Gen. R. Prac., Rule 416.

Section 303(b) provides, in relevant part:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is *not contingent as to liability or the subject of a bona fide dispute as to liability or amount,* or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $13,475 of such claims;

*See* 11 U.S.C. § 303(b) (2007) (emphasis added).

"As originally enacted, § 303 did not exclude creditors' claims that were the subject of bona fide disputes." *See In re Mountain Dairies, Inc.,* 372 B.R. 623, 632 (Bankr.S.D.N.Y.2007). "The language was added by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 426(b), 98 Stat. 333, 392." *Id.,* citing 11 U.S.C.A. § 303(b)(1) (historical and statutory notes). "The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ('BAPCPA') further amended § 303 by adding the phrase 'as to liability or amount' to §§ 303(b)(1) and (h)(1) following the phrase 'bona fide dispute.' " *Mountain Dairies,* 372 B.R. at

632–633, citing *In re Euro–American Lodging Corp.,* 357 B.R. 700, 712 n. 8 (Bankr.S.D.N.Y.2007).

Section 303(h) provides, in pertinent part:

(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount.

*See* 11 U.S.C. § 303(h) (2007).

■■■ "To be eligible to file an involuntary petition in bankruptcy, the creditor must be the holder of claim against the debtor that is not contingent or subject to a bona fide dispute." *See In re Tichy Elec. Co. Inc.,* 332 B.R. 364, 371 (Bankr. N.D.Iowa 2005), citing *In re ELRS Loss Mitigation, LLC,* 325 B.R. 604, 609–10 (Bankr.N.D.Okla.2005); 11 U.S.C. § 303(b). "The bankruptcy court enters an order for relief in an involuntary proceeding if it finds that the debtor is generally not paying its debts as they become due." *Tichy,* 332 B.R. at 371, citing 11 U.S.C. § 303(h); see also *Ex–L Tube, Inc.,* 2007 WL 541670 (Bankr.W.D.Mo.2007).

■■ "The burden of proof lies with the petitioning creditors to establish that their claims are not subject to a bona fide dispute and that the debtor is not paying debts as they become due." *Id.,* citing *ELRS Loss,* 325 B.R. at 610; *In re Rimell,* 946 F.2d 1363, 1364 (8th Cir.1991); see also *Mountain Dairies,* 372 B.R. at 633–634.

■ To ascertain whether the petitioner's claim is the subject of a bona fide dispute as to liability, "the proper standard requires the bankruptcy court to 'determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt.'" *Rimell*, 946 F.2d at 1365, citing *Matter of Busick*, 831 F.2d 745, 750 (7th Cir.1987); *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1544 (10th Cir.1988). "In applying this standard, the petitioning creditor must establish a prima facie case that no bona fide dispute exists." *Rimell*, 946 F.2d at 1365. "Once this is done, the burden shifts to the debtor to present evidence demonstrating that a bona fide dispute does exist." *Id.*, citing *Bartmann*, 853 F.2d at 1544.

In this case, there is no plausible contest to the liability of the debt. The alleged debtor was convicted of the first-degree murder of the petitioner's husband. Hockel's pending wrongful death action against the debtor is plainly valid. However, the state court litigation is presently incomplete. The case has not been tried and the amount of the debt is not determined. Therefore, the central question is whether the petition is ineligible on its face for the fact of the sole claim being unliquidated and therefore subject to dismissal for lack of jurisdiction, or, whether the Conservator's response to the petition constitutes a waiver or admission with respect to the § 303(b) requirement of undisputed claim amount and satisfies Hockel's burden to demonstrate a prima facie case that no bona fide dispute as to liability or amount exists.

Addressing another eligibility requirement of § 303(b), "the U.S. District Court affirmed the Bankruptcy Court and held that the Bankruptcy Court did not lack subject matter jurisdiction when a single creditor with knowledge that the debtor had twelve or more creditors, filed an involuntary bankruptcy petition against the debtor, without joining two additional creditors." *See In re Coppertone Communications, Inc.*, 96 B.R. 233, 235 (Bankr. W.D.Mo.1989), citing *In re Earl's Tire Service, Inc.*, 6 B.R. 1019, 1023 (D.Del.1980). "The court stated that the number of petitioning creditors is not related to the issue of the bankruptcy court's subject matter jurisdiction." *Id.*, citing *Earl's* at 1021.

"The court in *Earl's* cited *Canute Steamship Co. v. Pittsburgh & West Virginia Coal Co.*, 263 U.S. 244, 44 S.Ct. 67, 68 L.Ed. 287 (1923), stating that '[t]he Supreme Court in rejecting a creditor's challenge to the sufficiency of the number of petitioning creditors, has stated [that] the filing of a petition, sufficient on its face … clearly gives the bankruptcy court jurisdiction over the proceeding.'" *Coppertone*, 96 B.R. at 235, citing *Earl's*, 6 B.R. at 1022. "This same reasoning was echoed by the court in *In re Alta Title Co.*, 55 B.R. 133, 137 (Bankr.D.Utah 1985), which wrote that 'some courts have labeled the three petitioning creditor requirement as jurisdictional.'" *Coppertone*, 96 B.R. at 235. "This requirement is not jurisdictional in the sense of subject matter jurisdiction but is a substantive matter which must be waived or proved if put in issue." *Coppertone*, 96 B.R. at 235.

■ "The *Alta Title* court added that while a petition for involuntary bankruptcy could be filed, which was so clearly defective on its face to warrant dismissal, it should be treated with the same liberality as a civil complaint." *Id.*, citing *In re Molen Drilling Co., Inc.*, 68 B.R. 840 (Bankr.D.Mont.1987). "While the strict burden of proving the basis for the involuntary relief on the merits rests upon the petitioning creditors, the procedural requirements for commencement of the involuntary petition are not stringently enforced." *Id.* "This flexible approach

results in an involuntary petition being tried on its merits." *Id.*

This analysis of the eligibility requirement of the number of petitioning creditors lends itself to the conclusion that the other eligibility requirements of § 303(b) are likewise not jurisdictional. Other courts are in accord. "Section 303(b) determines whether a creditor is 'eligible' to file the petition." *See In re Rambo Imaging, L.L.P.,* 2007 WL 3376163 (Bankr. W.D.Tex.2007), citing Official Form 5 for an Involuntary Petition. "In the Fifth Circuit, however, it is clear that 'eligibility does not raise an issue of subject matter jurisdiction.'" *Rambo Imaging,* 2007 WL 3376163. "In *Phillips,* the Court of Appeals addressed a debtor's eligibility under 11 U.S.C. § 109 to file a voluntary petition, but its analysis applies as well to the filing of an involuntary petition:

> [S]ubject matter jurisdiction of the bankruptcy court comes from 28 U.S.C. § 1471 and 28 U.S.C. § 157, which provide that the bankruptcy courts shall have exclusive jurisdiction of all cases arising under Title 11. On the other hand, issues pertaining to whether a debtor meets the requirements of § 109(g)(2) only 'determine whether or not the court must dismiss the case. They are factual or legal questions which the court must determine. They are the issues raised by the pleadings. They are defenses not jurisdictional requirements."

*See In re Phillips,* 844 F.2d 230, 236 (5th Cir.1988), quoting *In re Johnson,* 13 B.R. 342, 346 (Bankr.D.Minn.1981). "Similarly, in *Abramson v. Boedeker,* 379 F.2d 741, 746 (5th Cir.1967), in examining an involuntary petition under the Bankruptcy Act, the Court held 'that allegations in the wording of the statute, although vulnerable to objection by the debtor-alleged-bankrupt ..., are not "jurisdictionally" defec-

tive.'" *Rambo Imaging,* 2007 WL 3376163; see also *In re Bowshier,* 313 B.R. 232, 239 (Bankr.S.D.Ohio 2004) ("The court concludes that section 303 requirements for the filing of an involuntary petition are nonjurisdictional in nature.").

"In order to retain jurisdiction pursuant to § 303, certain factual and legal determinations must be made." *See In re Johnson,* 13 B.R. 342, 346 (Bankr.D.Minn. 1981):

> These determinations include whether or not the debtor is a farmer or charitable corporation; whether sufficient creditors with sufficient claims have joined in the petition; and whether the debtor meets the requirements of 11 U.S.C. § 109(b) and (d). If the court finds that any of the required determinations are adverse to the petitioning creditors, the case must be dismissed and damages awarded to the debtor. These determinations do not give this court jurisdiction. Jurisdiction comes from 28 U.S.C. § 1471.
>
> They determine whether or not the court must dismiss the case. They are factual or legal questions which the court must determine. They are the issues raised by the pleadings. They are defenses not jurisdictional requirements.

*Id.;* see also *Phillips,* 844 F.2d at 236 n. 2 ("[T]he courts holding that the [eligibility] issue is not jurisdictional generally have engaged in an analysis of the issue, while the courts holding that it is a matter of jurisdiction have not.") (citations omitted). Following this line of reasoning and because, under *Rimell,* 946 F.2d at 1365, it is the prevailing rule in the Eighth Circuit that the bankruptcy court has at least jurisdiction in an involuntary proceeding to determine whether a bona fide dispute exists as to liability (and/or amount under § 303 as amended by BAPCPA), the ra-

tional conclusion is that § 303(b) eligibility requirements are not jurisdictional in the sense that an involuntary petition based on a single unliquidated claim is cause per se for dismissal. Unliquidated is not necessarily the same as disputed.

 Under *Rimell,* there is a bona fide dispute if "there are 'substantial' factual and legal questions raised by the debtor." *Rimell,* 946 F.2d at 1365, citing *B.D.W. Assoc. v. Busy Beaver Building Centers, Inc.,* 865 F.2d 65, 66–67 (3d Cir. 1989) (citing *Busick,* 831 F.2d at 750). In the present case, the alleged debtor, by his Conservator, has not challenged the involuntary petition. The Conservator has not contested the liability or amount of the petitioner's claim, and has filed into the record of the case a statement of his intention not to answer the petition and not to participate in the proceedings. The debtor having not raised any factual or legal question whatsoever, the Court is hardly in a position to determine the petitioner's claim to be disputed as to liability or amount.

This is not, in these unusual particular circumstances, a case that "reflects efforts by a single creditor to use the Bankruptcy Court as a forum for the trial and collection of an isolated disputed claim, a practice condemned in prior decisions." *See In re Nordbrock,* 772 F.2d 397 (8th Cir.1985), citing *Matter of Goldsmith,* 30 B.R. 956, 963 (Bankr.E.D.N.Y.1983); *In re R.N. Salem Corp.,* 29 B.R. 424, 429 (Bankr. S.D.Ohio 1983); *In re SBA Factors of Miami, Inc.,* 13 B.R. 99, 100–101 (Bankr. S.D.Fla.1981); *In re Nar–Jor Enterprises Corp.,* 6 B.R. 584, 586 (Bankr.S.D.Fla. 1980). On the contrary, Saunders, by his Conservator, has intentionally withheld from defending against the involuntary petition. The Conservator has not and will not contest the liability or the amount of Hockel's claim against Saunders.

In light of Saunders' acknowledgment of the petition and unwillingness to answer it or otherwise defend against it, Hockel has prima facie established that her claim is not subject to a bona fide dispute as to liability or amount, and thereby satisfied the eligibility requirements under § 303(b). The petition not having been timely controverted, the order for relief will be entered pursuant to § 303(h).

### III. DISPOSITION

IT IS HEREBY ORDERED:

1. The petitioner's motion to strike the response filed on behalf of the debtor is GRANTED and the response (docket entry # 6) is stricken; and

2. The motion to dismiss purportedly filed on behalf of the debtor is DENIED.