[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 23, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13429

_____

D. C. Docket No. 06-02575-CV-TCB-1
BKCY No. 02-93973

TRUSTED NET MEDIA HOLDINGS, LLC,

Debtor.

_____

TRUSTED NET MEDIA HOLDINGS, LLC,

Plaintiff-Appellant,

versus

THE MORRISON AGENCY, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(April 23, 2008)**

Before HULL and WILSON, Circuit Judges, and ALBRITTON,[*] District Judge.

HULL, Circuit Judge:

This appeal presents the question of whether 11 U.S.C. § 303(b)'s requirements for filing an involuntary bankruptcy petition are subject matter jurisdictional in nature. Both the district court and the bankruptcy court held that they are not. Our precedent, though, says otherwise. Thus, although we believe our precedent should be reexamined, we must reverse.

## I. BACKGROUND

Appellee The Morrison Agency, Inc. ("Morrison") is a creditor of Appellant Trusted Net Media Holdings, LLC ("Trusted Net"). On April 20, 2002, Morrison, as a creditor, filed an involuntary bankruptcy petition against its debtor Trusted Net, requesting liquidation of Trusted Net's assets pursuant to Chapter 7 of the Bankruptcy Code. Morrison's petition listed Morrison as the only petitioning creditor of Trusted Net, and described Morrison's claim against Trusted Net as "Trade Debt/Judgment" in an amount "[n]ot less than [$]534,000.00."

Morrison's involuntary petition stated that Morrison was "eligible to file this petition pursuant to 11 U.S.C. § 303(b)." As described in more detail below, § 303(b) permits the commencement of an involuntary bankruptcy case against a

---

[*]Honorable William H. Albritton, III, United States District Judge for the Middle District of Alabama, sitting by designation.

debtor (1) by three or more creditors holding non-contingent, undisputed claims against that debtor, or (2) by a single holder of a non-contingent, undisputed claim if there are fewer than twelve such creditors of the debtor. At the time Morrison filed its involuntary petition against Trusted Net, § 303(b) also required that the petitioning creditor(s)' non-contingent, undisputed claims against the debtor aggregate at least $11,625 (the threshold sum is now $13,475). See 11 U.S.C. § 303(b) (2008); 11 U.S.C. § 303(b) (2001).

The debtor Trusted Net, whose assets were at that time under the control of a state-court-appointed receiver, filed no response to Morrison's involuntary petition. Accordingly, the bankruptcy court entered an Order for Relief on May 15, 2002 and appointed a Chapter 7 trustee. The trustee marshaled Trusted Net's assets in preparation for liquidation.

The bankruptcy case proceeded through administration for two years. In April 2004, David W. Huffman, an officer and controlling member of Trusted Net, filed a motion to dismiss the case. Huffman was also a creditor of Trusted Net as to his deferred salary. Huffman's motion to dismiss argued, among other things, that Morrison's petition violated § 303(b) in two ways: (1) Morrison's claim against Trusted Net was subject to a bona fide dispute, and therefore Morrison did not hold a non-contingent, undisputed claim against the debtor; and (2) Morrison's

single-creditor petition was insufficient because Trusted Net had twelve or more creditors holding non-contingent, undisputed claims. Huffman argued that the involuntary petition's failure to satisfy § 303(b) divested the bankruptcy court of subject matter jurisdiction. The Chapter 7 trustee opposed the motion. The bankruptcy court conducted a hearing and, on May 13, 2004, denied Huffman's motion to dismiss. No appeal was taken from the bankruptcy court's denial of Huffman's motion to dismiss.

Another two years later, in April 2006, five of Trusted Net's creditors, including Morrison (but not including Huffman), settled with the trustee as to the amount of their respective claims. Huffman objected to the settlement of the claims of three of the creditors, including Morrison. On July 14, 2006, the bankruptcy court overruled Huffman's objections and approved the settlements.

Shortly thereafter, and more than four years after commencement of the case, Trusted Net (through counsel retained at Huffman's behest) filed a motion to dismiss the entire bankruptcy case for lack of subject matter jurisdiction. Similar to Huffman's motion two years earlier, Trusted Net argued that § 303(b)'s requirements must be met for the bankruptcy court to have subject matter jurisdiction, and that Morrison's petition violated § 303(b) because: (1) at the time it filed its involuntary petition, Morrison was not the holder of a non-contingent,

4

undisputed claim, and (2) Morrison's involuntary Chapter 7 petition was not joined by three holders of non-contingent, undisputed claims.

On October 10, 2006, the bankruptcy court denied Trusted Net's motion to dismiss. With regard to Trusted Net's subject matter jurisdiction argument, the bankruptcy court held that § 303(b) of the Bankruptcy Code was not jurisdictional and that "any argument by the Debtor that the petitioning creditor's claims are the subject of a bona fide dispute or that more than one petitioning creditor was required to put this Debtor into bankruptcy has been waived."

Trusted Net appealed the bankruptcy court's ruling to the district court. The district court affirmed without elaboration, finding the bankruptcy court's order to be "thorough, well-reasoned, and correct in every respect." Trusted Net appealed to this Court.

In this appeal, Trusted Net does not contest the bankruptcy court's finding that Trusted Net, through its four-year delay, waived its arguments that Morrison's claims are subject to bona fide dispute and that more than one petitioning creditor was required. Rather, Trusted Net raises a single jurisdictional claim: that these requirements in § 303(b) are subject matter jurisdictional, and thus cannot be waived.

## II. STANDARD OF REVIEW

5

In bankruptcy appeals, this Court independently examines the factual and legal findings of the bankruptcy court using the same standards as did the district court. In re Elec. Mach. Enters., 479 F.3d 791, 795 (11th Cir. 2007). Where, as here, we review the bankruptcy court's legal determinations, we do so de novo. Id.

## III. DISCUSSION

The issue Trusted Net raises–whether 11 U.S.C. § 303(b)'s requirements for the filing of an involuntary bankruptcy petition must be met to bestow upon the bankruptcy court subject matter jurisdiction–has divided the circuits and lower courts that have considered it. We approach the issue by first setting forth the statutory framework for bankruptcy court jurisdiction and the commencement of involuntary bankruptcy cases. We then discuss briefly the split in authority on the issue and, finally, the case of In re All Media Properties, Inc., 646 F.2d 193 (5th Cir. Unit A May 1981), aff'g 5 B.R. 126 (Bankr. S.D. Tex. 1980), which Trusted Net contends settles the issue for this circuit.

## A. Statutory Scheme

### 1. Title 28

Congress established the jurisdiction of the bankruptcy courts in Title 28. Kontrick v. Ryan, 540 U.S. 443, 453, 124 S. Ct. 906, 914 (2004). Section 1334 of Title 28 provides that "the district courts shall have original and exclusive

6

jurisdiction of all cases under title 11 [the Bankruptcy Code]," and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a)-(b).

Section 151 of Title 28 provides that the bankruptcy courts are "a unit of the district court." 28 U.S.C. § 151. Pursuant to 28 U.S.C. § 157(a), "[e]ach district court may provide that any or all cases under title 11 [the Bankruptcy Code] and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Section 157(b)(1) further provides that bankruptcy courts "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to [appellate] review" by the district court. 28 U.S.C. § 157(b)(1).[1] Thus, bankruptcy court jurisdiction exists, by reference from the district courts, "in three categories of proceedings: those that 'arise under title 11,' those that 'arise in cases under title 11,' and those 'related to cases under title 11.'" In re Toledo, 170 F.3d 1340, 1344 (11th Cir. 1999) (citation

---

[1] For non-core proceedings that are "otherwise related to a case under title 11," the bankruptcy court may hear the proceeding but "shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

7

omitted); see also In re Atlanta Retail, Inc., 456 F.3d 1277, 1287 (11th Cir.), cert. denied, 127 S. Ct. 836 (2006).

2. Title 11

In turn, Title 11, the Bankruptcy Code, contains nine chapters. Chapter 7, governing liquidation, is the substantive chapter operative in this case, and § 303(b), the procedural statute at issue, is contained in Chapter 3, entitled Case Administration.[2] Further, Chapter 3 of Title 11 is divided into four subchapters, including Subchapter I, entitled "Commencement of a Case." See 11 U.S.C. §§ 301-308. Sections 301 and 302 of Subchapter I concern the commencement of, respectively, voluntary bankruptcy cases and joint cases filed by a debtor and his or her spouse. See 11 U.S.C. §§ 301-302. Section 303 of Subchapter I, at issue here, addresses the commencement of involuntary cases. See 11 U.S.C. § 303.

Although bankruptcy cases are often commenced on the debtor's own initiative, "Section 303 of the Bankruptcy Code allows creditors in some instances

---

[2]Chapter 1 (General Provisions), Chapter 3 (Case Administration), and Chapter 5 (Creditors, the Debtor, and the Estate) apply, with some exceptions, to all debtor-relief cases brought under the Bankruptcy Code other than those concerning municipal debts. See 11 U.S.C. § 103. Chapter 15 (Ancillary and Other Cross-Border Cases) addresses cases involving cross-border insolvency. 11 U.S.C. §§ 1501 et seq. The remaining five chapters govern the different forms of bankruptcy relief that are available under the Code. They are: Chapter 7 (Liquidation), Chapter 9 (Adjustment of Debts of a Municipality), Chapter 11 (Reorganization), Chapter 12 (Adjustment of Debts of a Family Farmer or Fisherman with Regular Annual Income), and Chapter 13 (Adjustment of Debts of an Individual with Regular Income). See generally Title 11, U.S. Code.

to hale a debtor into bankruptcy court by filing an involuntary petition." 2 William

L. Norton, Jr. & William L. Norton III, Norton Bankruptcy Law & Practice § 22:1

(3d ed. 2008). Section 303(a) provides that "[a]n involuntary case may be

commenced only under chapter 7 or 11 of this title, and only against a person . . .

that may be a debtor under the chapter under which such case is commenced." 11

U.S.C. § 303(a). Section 303(b), the subsection with which we are primarily

concerned, sets forth the prerequisites for commencing an involuntary petition,

specifically who is qualified to do so, as follows:

> An involuntary case against a person *is commenced* by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title–
>
> (1) *by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute*, or an indenture trustee representing such a holder, if such claims aggregate at least $11,625 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims; [or]
>
> (2) *if there are fewer than 12 such holders*, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, *by one or more of such holders* that hold in the aggregate at least $11,625 of such claims. . . .

11 U.S.C. § 303(b) (2001) (emphasis added) (footnotes omitted).[3]

---

[3]We quote the 2001 version of the statute, which was in effect at the time Morrison filed its involuntary petition. Section 303(b)(1) has since been amended to add after the term "a bona fide dispute" that the claims must not be the subject of a bona fide dispute "as to liability or

Once the involuntary petition has been filed, § 303(h) provides that "[i]f the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed."  11 U.S.C. § 303(h).[4]  Moreover, § 303(c) states that after the filing of an involuntary petition, other creditors with non-contingent, unsecured claims may join in the petition as if they were original petitioning creditors, as follows:

> After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, other than a creditor filing under subsection (b) of this section, may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.

11 U.S.C. § 303(c).

Against this statutory background, Trusted Net asserts that, at the time Morrison's involuntary petition was filed, Morrison's petition failed to meet the § 303(b) requirements because:  (1) Morrison's claim against Trusted Net was the subject of a bona fide dispute; and (2) Trusted Net had twelve or more non-insider

---

amount."  11 U.S.C. § 303(b)(1) (2008).  Additionally, in the current § 303(b), the minimum aggregate claim value for petitioning creditors is $13,475 rather than $11,625, as it was at the time of Morrison's petition.  Compare 11 U.S.C. § 303(b) (2008), with id. (2001).  See footnote 9, infra.

    [4]Thereafter, § 303(h) provides: "Otherwise, after trial, the court shall order relief against the debtor . . . only if–(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount; or (2) within 120 days before the date of the filing of the petition, a custodian . . . was appointed or took possession [of the debtor's property]."  11 U.S.C. § 303(h).

holders of undisputed, non-contingent claims, yet Morrison's petition was not filed by three petitioning creditors. In response, Morrison argues that its petition established the prima facie grounds for commencing an involuntary bankruptcy case and, in any event, Trusted Net waived any potential objections to Morrison's petition by waiting four years to raise them. Trusted Net does not contest that its four-year delay would normally constitute a waiver; instead, it contends that the § 303(b) requirements are subject matter jurisdictional and hence incapable of being waived.

## B.    Circuit Split

As mentioned above, the circuits, and other courts, are split on whether the requirements of § 303(b) must be satisfied to convey subject matter jurisdiction over an involuntary case upon the bankruptcy court or whether, instead, they are merely "substantive matters which must be proved or waived for petitioning creditors to prevail in involuntary proceedings." In re Rubin, 769 F.2d 611, 614 n.3 (9th Cir. 1985). In other words, do the commencement requirements of § 303(b) in Title 11 address the jurisdictional power of the court to hear an involuntary case or, rather, does Title 28 contain the jurisdictional grant and do § 303(b)'s requirements simply constitute elements that must be established to sustain an involuntary proceeding?

11

The Ninth Circuit has concluded that "[p]etitioning creditors cannot prevail unless they show that their claims are not subject to bona fide disputes, but the bankruptcy court is not without jurisdiction prior to this determination." Rubin, 769 F.2d at 615. The Ninth Circuit determined that the bankruptcy court is vested with general power under Title 28 "to exercise jurisdiction of all cases under title 11," as well as "exclusive jurisdiction of all the property of debtors in such cases." Id. (quotation marks and citation omitted). Therefore, the Ninth Circuit has held that both the "bona fide dispute" and three-petitioning-creditor requirements of § 303(b) can be waived and hence are not subject matter jurisdictional. See id. at 614-15; In re Mason, 709 F.2d 1313, 1318-19 (9th Cir. 1983).

The Second Circuit, on the other hand, has held that § 303(b)'s requirements are subject matter jurisdictional. In re BDC 56 LLC, 330 F.3d 111, 118 (2d Cir. 2003). It reasoned that "[w]hether an alleged debtor is properly before the bankruptcy court in an involuntary case is a threshold determination that should be made at the earliest possible stage of the proceedings," and the bona fide dispute requirement of § 303(b), as a prerequisite to bringing an involuntary position, is such a threshold determination. Id. The Second Circuit further reasoned:

> Any creditor wishing to invoke the bankruptcy court's jurisdiction in an involuntary case should be required to demonstrate at the earliest practicable point that its petition satisfies this requirement. Otherwise, creditors could, on the basis of relatively untested claims,

12

haul a solvent debtor with whom they have legitimate disputes into bankruptcy court and force it to defend an involuntary proceeding while the bankruptcy court leaves for a later merits determination whether the debtor is even properly before it.

Id. at 118-19. Thus, the Second Circuit held that "the requirement that a petitioning creditor's claim not be subject to a bona fide dispute [is] both an element of the condition upon which a controverted order for relief may be entered and a necessary prerequisite for the bankruptcy court's jurisdiction." Id. at 118 (quotation marks and citations omitted).

Most courts to consider the issue have reached the conclusion that § 303(b)'s filing requirements are not subject matter jurisdictional. See, e.g., Rubin, 769 F.2d at 614-15; In re Earl's Tire Serv., 6 B.R. 1019, 1022-23 (D. Del. 1980); In re Saunders, 379 B.R. 847, 855-57 (Bankr. D. Minn. 2007); In re MarketXT Holdings Corp., 347 B.R. 156, 161-62 (Bankr. S.D.N.Y. 2006); In re Coppertone Commc'ns, Inc., 96 B.R. 233, 234-35 (Bankr. W.D. Mo. 1989); In re Alta Title Co., 55 B.R. 133, 136-37 (Bankr. D. Utah 1985).[5] The leading commentators agree. See 2 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy (15th ed. 2007) ¶ 303.04[9] ("The better argument . . . is that the [three-creditor] requirement [of §

_____

[5]Although some bankruptcy courts earlier had reached the same conclusion as the Second Circuit, that § 303(b) is subject matter jurisdictional, they did so without explanation. See In re Paczesny, 283 B.R. 715, 718 (Bankr. N.D. Ill. 2002); In re Onyx Telecomms., Ltd., 60 B.R. 492, 496 (Bankr. S.D.N.Y. 1985); In re New Mexico Props., Inc., 18 B.R. 936, 939-40 (Bankr. D.N.M. 1982).

303(b)] can be waived, which suggests that it is not a jurisdictional requirement.");

2 William L. Norton, Jr. & William L. Norton III, Norton Bankruptcy Law & Practice § 22:3 (3d ed. 2008) ("Like the three-petitioner requirement, the undisputed-claim requirement [of § 303(b)] is not jurisdictional, but goes to the merits. If the point is contested, petitioners cannot prevail unless they show that their claims are not subject to bona fide dispute, but the bankruptcy court is not without jurisdiction prior to the determination.").

Moreover, we find the reasoning of the decisions that hold § 303(b)'s requirements are not subject matter jurisdictional to be more persuasive, for several reasons. First, this conclusion comports with the basic nature of subject matter jurisdiction–i.e., that it is the statutorily conferred power of the court to hear a class of cases. As a class of cases, involuntary bankruptcy cases unquestionably arise under Title 11 (the Bankruptcy Code), and thus fall within the Congressional grant of subject matter jurisdiction to the bankruptcy courts. See 28 U.S.C. § 157(a) (authorizing bankruptcy courts to hear and determine "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11").

Second, the holding that § 303(b) in Title 11 is not subject matter jurisdictional is consistent with § 303's statutory language. Section 303(b) does

14

not contain any explicit reference to its requirements being jurisdictional in nature. And, § 303(h) provides that "[i]f the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed." Accord Fed. R. Bankr. P. 1013(b) ("If no pleading or other defense to a petition is filed within the time provided . . ., the court, on the next day, or as soon thereafter as practicable, shall enter an order for the relief requested in the petition."). Thus, the statutory scheme clearly contemplates that relief will be immediately granted if no timely response is filed. However, a failure to timely object to an involuntary petition's compliance with § 303(b) arguably should not result in relief being immediately entered against the debtor if the statutory requirements are subject matter jurisdictional and not waivable.

Furthermore, § 303(c) states that a creditor who has not joined in the involuntary petition may be added as a petitioning creditor before the case is dismissed or relief is ordered. 11 U.S.C. § 303(c). The statute therefore grants the court the power to permit one or more creditors to join a petition that may otherwise be dismissed. But, it seems anomalous at best to hold that a bankruptcy court, which lacks jurisdiction over an involuntary case because the petition was defectively filed, may subsequently create jurisdiction for itself by permitting additional creditors to join the petition. Cf. Newman-Green, Inc. v. Alfonzo-

15

Larrain, 490 U.S. 826, 832, 109 S. Ct. 2218, 2222 (1989) (interpreting 28 U.S.C. § 1653 to permit a trial or appellate court to allow a party to amend its pleadings "to remedy inadequate jurisdictional allegations, but not defective jurisdictional facts"); Elend v. Basham, 471 F.3d 1199, 1206 (11th Cir. 2006) (holding, with regard to standing, that a court "lacks the power to create jurisdiction by embellishing a deficient allegation of injury") (quotation marks and citation omitted).  Therefore, if § 303(b) is read to be a matter of subject matter jurisdiction, some tension arises between subsection (b) and subsections (c) and (h) of § 303.  Interpreting § 303(b) as non-jurisdictional, on the other hand, results in a harmonious operation of the statutory subsections.

Third, the Second Circuit's reasoning in BDC–that § 303(b) is subject matter jurisdictional because an early, threshold determination of the § 303(b) requirements is needed–is unpersuasive.  Apart from BDC's failure to account for the import of § 303(c) and § 303(h), it ignores the fact that subject matter jurisdiction turns only upon whether the court has the statutorily-conferred power to hear the case before it, and therefore has nothing necessarily to do with the speedy determination of claims or whether an alleged debtor–or any other party–is "properly before the . . . court."  BDC, 330 F.3d at 118.  BDC's rationale also fails on its own terms, as the facts of this case show.  If § 303(b)'s requirements are

subject matter jurisdictional, an involuntary debtor could raise a § 303(b) challenge at any point in the proceedings, whereas if § 303(b) is not jurisdictional, § 303(h) and Rule 1013 would require that the issue of the petitioning creditors' compliance with § 303(b) be determined at the outset–as a threshold matter–or be forever waived. Consequently, a policy in favor of determining the sufficiency of an involuntary petition at the outset of the case is best served by a non-jurisdictional reading of § 303(b).

Fourth, this Court has interpreted similar "commencement of a case" language, found elsewhere in the Bankruptcy Code, to be non-jurisdictional. In In re Pugh, 158 F.3d 530, 530 (11th Cir. 1998), we considered whether 11 U.S.C. §§ 546(a) and 549(d), which establish limitations periods on a bankruptcy trustee's commencement of adversary proceedings to avoid certain pre- and post-petition transfers, liens, and offsets involving the debtor's assets, "operate to divest a bankruptcy court of subject matter jurisdiction once they have elapsed, or . . . constitute statutes of limitations that can be waived." Section 546(a) provided, at the time the Pugh bankruptcy case began, that "[a]n action or proceeding under section 544, 545, 547, 548, or 553 of this title [governing the trustee's authority to avoid certain pre-petition transactions involving the debtor's assets] may not be commenced after the earlier of–(1) two years after the appointment of a trustee . . .

17

or (2) the time the [bankruptcy] case is closed or dismissed."  11 U.S.C. § 546(a) (1988).  Section 549(d) provided (and still provides) that "[a]n action or proceeding [to avoid post-petition transfers] may not be commenced after the earlier of–(1) two years after the date of the transfer sought to be avoided; or (2) the time the [bankruptcy] case is closed or dismissed."  11 U.S.C. § 549(d).  Sections 546(a) and 549(d) are similar to § 303(b) in that both statutes expressly provide conditions under which a proceeding under Title 11 may be "commenced."

In Pugh, the debtors lost an avoidance action to which they had not raised the limitations defense, and on appeal they argued that the limitations periods established in §§ 546(a) and 549(d) were subject matter jurisdictional, such that the failure to earlier raise them could not constitute a waiver.  Pugh, 158 F.3d at 530-32.  This Court acknowledged that we had not considered the question before, but that there was a split of authority elsewhere regarding

> whether these code provisions constitute grants of subject matter jurisdiction that leave a court without any authority to hear certain proceedings–i.e., that extinguish the right of action itself by divesting a court of its subject matter jurisdiction over certain proceedings–after the limitations period has elapsed, or whether they are true statutes of limitations that restrict the power of a court to grant certain remedies in a proceeding over which it has subject matter jurisdiction.

Id. at 533-34.  After considering the statutory language, existing authority, legislative history, and overall statutory scheme, this Court concluded that §§

18

546(a) and 549(d) are waivable statutes of limitation rather than restrictions on the bankruptcy courts' subject matter jurisdiction. See id. at 534-38. Among other things, this Court in Pugh relied upon the fact that the subject matter jurisdiction of the bankruptcy courts derives from 28 U.S.C. § 157, and that neither § 546(a) nor § 549(d) explicitly refers to jurisdiction. Id. at 538. Thus, for reasons that apply equally well to § 303(b), this Court in Pugh held that statutory conditions within the Bankruptcy Code upon the "commence[ment]" of a bankruptcy action are not subject matter jurisdictional. Pugh, 158 F.3d at 532-33; 11 U.S.C. §§ 546(a), 549(d).

## C.    **All Media**

Ordinarily, our discussion would end here. However, Trusted Net contends that we are not free to apply our own judgment to the interpretation of § 303(b) because this Court's predecessor, in All Media, already decided the issue presented. See In re All Media Properties, Inc., 646 F.2d 193 (5th Cir. 1981), aff'g 5 B.R. 126 (Bankr. S.D. Tex. 1980). In All Media, the former Fifth Circuit issued a summary affirmance "on the basis of the Memorandum Opinion of Bankruptcy Judge E.H. Patton, Jr., reported at 5 B.R. 126 (Bkrtcy., 1980)." Id. at 193. Thus, it adopted both the holding and the reasoning of the bankruptcy court's published

19

opinion in the case.[6]

The parties do not dispute that the All Media decision is binding upon this Court.[7] What they do contest is whether All Media controls: In other words, whether All Media actually and squarely held that § 303(b)'s requirements are subject matter jurisdictional.

All Media concerned involuntary Chapter 11 petitions brought against two related (parent and wholly owned subsidiary) companies involved in the operation of a radio station. The involuntary petitions were brought under the then-recently-enacted Bankruptcy Code.[8] All Media, 5 B.R. at 130-31. The two debtors, All Media and Artlite, contested the petitions; the bankruptcy court consolidated the cases and conducted a trial. Id. at 131. The court then issued its memorandum

---

[6]Henceforth, when discussing the All Media case we refer to the bankruptcy court's opinion unless otherwise stated.

[7]In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), this Court accepted as binding precedent all Fifth Circuit cases decided before October 1, 1981. We have also held that when an earlier panel of this Court has expressly adopted a lower court's order, that order is binding precedent unless and until overruled by the Supreme Court or this Court sitting en banc. See Dickerson v. Alachua County Comm'n, 200 F.3d 761, 768 & n.8 (11th Cir. 2000) (holding that a plaintiff's 42 U.S.C. § 1985(3) civil rights conspiracy claim was controlled by Chambliss v. Foote, 562 F.2d 1015, 1015 (5th Cir. 1977), a former Fifth Circuit case that, like the circuit court opinion in All Media, affirmed simply "on the basis of the district court's [published] opinion").

[8]Before 1979, bankruptcy rights and actions were governed by the Bankruptcy Act of 1898 (the "Act"). In re Alvarez, 224 F.3d 1273, 1278 n.13 (11th Cir. 2000). Effective October 1, 1979, the Act was repealed and replaced by the current Bankruptcy Code (the "Code"). Id.; Mitsubishi Int'l Corp. v. Clark Pipe & Supply Co., 735 F.2d 160, 162 n.2 (5th Cir. 1984).

20

opinion on the debtors' challenges to the involuntary petitions. As the court

described it,

> [t]he issues to be determined include whether each of the petitioning
> creditors meets the Code requirements for a creditor entitled to bring
> an involuntary petition, whether the requisite jurisdictional grounds
> exist and whether each of the alleged debtors is generally not paying
> its debts as such debts become due.

Id.[9]

The bankruptcy court first analyzed involuntary proceedings under the new

Code framework, discussing how to determine whether a petitioning creditor's

claim is "not contingent as to liability." Id. at 131-33. Next, since both

debtors–All Media and Artlite–had asserted defenses to the petitioning creditors'

---

[9]At the time the involuntary petitions were filed in All Media, § 303(b) of the Bankruptcy Code provided that:

> An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title–,
>
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims; [or]
>
> (2) if there are fewer than 12 such holders, excluding any employee or insider . . . , by one or more of such holders that hold in the aggregate at least $5,000 of such claims . . . .

11 U.S.C. § 303(b) (1980). Later amendments to § 303(b) increased the threshold dollar value of petitioning creditors' claims and added the requirement that their claims not be "the subject of a bona fide dispute as to liability or amount." Id. (2008). (As mentioned in footnote 3 supra, the version of § 303(b) in effect when Morrison filed its involuntary petition did not include the phrase "as to liability or amount.")

Except for the $5,000 minimum aggregate claim amount, which was $11,625 for Morrison and is $13,475 at present, every requirement that existed in § 303(b) at the time of the All Media decision existed in § 303(b) as of the date Morrison filed its petition.

claims, the bankruptcy court examined "to what extent defenses can be asserted to defeat an involuntary petition under the Code." Id. at 133-36. After reviewing the evidence, the court concluded that the petitioning creditors' claims were not contingent as to liability and therefore they satisfied the requirements of § 303(b). Id. at 136-42. Consequently, the court held, it was entitled to reach the ultimate issue of whether All Media and Artlite had been failing generally to pay their debts as such became due. Id. at 138, 142. It decided this final issue, as to each debtor, in favor of the petitioning creditors. Id. at 142-48.

The procedural posture of All Media differed dramatically from that of the present case, in that both All Media debtors immediately appeared and challenged the petitioning creditors' status and, thus, there was no waiver issue. Rather, the relevant issue before the All Media court was whether the petitioning creditors' claims were non-contingent as to liability and were valued, in the aggregate, at least $5,000 more than the value of any liens on the debtor's property that secured the claims, as required by § 303(b). Nevertheless, the All Media opinion is riddled with references to § 303(b)'s requirements as "jurisdictional." For example, the court stated,

> This is not to say that the requirement that the petitioning creditors be holders of claims that are not contingent as to liability is not jurisdictional. It is only to say that this requirement does not mean that all claims must necessarily be liquidated, undisputed, matured, or

22

reduced to judgment for the court to have jurisdiction.

Id. at 133. Additionally, the court stated that "[s]ince [All Media's petitioning creditors] are holders of claims not contingent as to liability and together their claims exceed $5,000 this court has jurisdiction to determine whether All Media has been generally paying its debts as they become due." Id. at 142. And, with respect to Artlite, the court concluded that because its petitioning creditors possessed non-liability-contingent claims, "the jurisdictional requirements of § 303(h)(1) have been met and . . . there is jurisdiction to determine whether Artlite was generally not paying its debts as they became due." Id. at 138.

In this case, Morrison argues that although All Media repeatedly referred to the involuntary petition filing requirements as jurisdictional, it never stated that they are **subject matter** jurisdictional. Morrison is correct that All Media never actually used the term "subject matter jurisdiction." Moreover, there is some language in the All Media opinion that suggests that the court, in speaking of jurisdiction, may have been referring not to the court's power to hear involuntary bankruptcy cases, but rather to the court's authority to bring an involuntary debtor before it, or to a substantive matter that must be proven only if put in issue. See id. at 137 ("The intent of § 303(b) is that those who are not meeting their obligations can be forced to submit to the jurisdiction of the bankruptcy court."); see also id. at

23

134 ("[W]here the issues concerning defenses to a claim of a petitioning creditor

are not clear and require adjudication of either substantial factual or legal

questions, the creditor should be recognized as qualified to join in the bringing of

an involuntary bankruptcy petition. On the other hand, if it is clear that the claim is

barred and the alleged debtor raises that defense, then that creditor should not be

allowed to participate in the involuntary petition.").

However, in spite of this somewhat loose language, the All Media court

made clear elsewhere in its opinion that the "jurisdictional" nature of § 303(b) to

which it referred was in fact of the non-waivable, subject matter jurisdiction

variety. In the clearest example, the court stated:

> In its brief All Media states that Best, Inc. is not entitled to bring an
> involuntary petition because its claims are fully secured. Although
> this issue was not raised by the pleadings or at trial, it may go to
> jurisdiction and it should be considered since a court can take notice
> and dismiss a claim for lack of jurisdiction on its own motion.

Id. at 140. To place this statement in context, the debtor All Media (after the trial)

made a "full security" argument, contending that the creditor Best, Inc. could not

comply with the § 303(b) requirement that debt to petitioning creditors exceed the

value of any liens securing that debt.[10] Although the court rejected All Media's

---

[10]Section 303(b) requires that an involuntary petition be brought by a creditor or creditors who hold non-contingent, undisputed claims against the debtor that are worth a certain, specific dollar amount "more than the value of any lien on property of the debtor securing such claims . . . ." 11 U.S.C. § 303(b). As mentioned above, at the time of the All Media case the

24

argument about Best's claim on the facts, the court expressly reached the issue, despite All Media's failure to plead it or raise it at trial. The above-quoted language demonstrates that the court did so because it considered non-compliance with § 303(b) to be a non-waivable jurisdictional defect.[11] Id. at 140-41.

Under our prior panel precedent rule, holdings made or adopted by an earlier panel–including express jurisdictional holdings–must be followed.[12] See Main Drug, Inc. v. Aetna U.S. Healthcare, Inc., 475 F.3d 1228, 1231 (11th Cir. 2007); Knight v. Columbus, Ga., 19 F.3d 579, 585 (11th Cir. 1994). And All Media's characterization of § 303(b) as imposing non-waivable jurisdictional requirements upon the bankruptcy court is holding, rather than dictum, because a determination that § 303(b) is subject matter jurisdictional was a necessary predicate for the court's consideration of All Media's argument–which was raised neither in the pleadings nor at trial–that the creditor Best, Inc. did not satisfy the statutory requirement of having an unsecured or undersecured claim. See Black v. United

threshold amount was $5,000; the current amount is $13,475. Compare id. (2008), with id. (1980).

[11]All Media's express consideration of the alleged § 303(b) violations as non-waivable jurisdictional defects distinguishes the case from the sort of "drive-by jurisdictional rulings" that the Supreme Court has held "should be accorded no precedential effect on the question whether the federal court had authority to adjudicate the claim in suit." Arbaugh v. Y & H Corp., 546 U.S. 500, 511, 126 S. Ct. 1235, 1242-43 (2006) (quotation marks and citation omitted).

[12]Admittedly, Pugh did not cite or rely on the All Media opinion. However, Pugh concerned the interpretation of 11 U.S.C. §§ 546(a) and 549(d), not 11 U.S.C. § 303(b). In re Pugh, 158 F.3d at 530.

25

States, 373 F.3d 1140, 1144 (11th Cir. 2004) ("Dictum is a term that has been variously defined as a statement that neither constitutes the holding of a case, nor arises from a part of the opinion that is necessary to the holding of the case."); see also United States v. Shields, 49 F.3d 707, 710 n.11 (11th Cir.) (interpreting United States v. Osburn, 955 F.2d 1500 (11th Cir. 1992), and stating that certain language was "holding rather than dictum because a determination that the statutory scheme in fact favored growers who have just completed their harvest over growers who have not yet harvested their marijuana plants was a necessary predicate to the Osburn court's subsequent consideration of the defendants' constitutional challenge to that sentencing distinction"), vacated, 65 F.3d 900 (11th Cir. 1995) (en banc).

Therefore, we conclude that we are bound by All Media's decision that the requirements of § 303(b) must be satisfied in order for the bankruptcy court to have subject matter jurisdiction over an involuntary bankruptcy case. We recognize that the weight of authority–and, in our view, the superior reasoning–lie against that holding. Nevertheless, All Media's holding in this regard is prior panel precedent, and therefore controls. See United States v. Steele, 147 F.3d 1316, 1317-18 (11th Cir. 1998) (en banc) ("Under our prior precedent rule, a panel cannot overrule a prior one's holding even though convinced it is wrong.").

26

## IV. CONCLUSION

Accordingly, we reverse the district court's order affirming the bankruptcy court's denial of Trusted Net's motion to dismiss on waiver grounds. The district court is instructed to remand the case to the bankruptcy court so that the latter may consider whether the requirements of 11 U.S.C. § 303(b) have been satisfied.

**REVERSED AND REMANDED.**